Michael M. Hall, Saginaw, Mich., for defendant, third-party plaintiff.

Arthur E. D'Hondt, Asst. Atty. Gen., Lansing, Mich., for third-party defendant.

**In re Linda L. GILBERT, Debtor.**

**Randall L. FRANK, Trustee, Plaintiff,**

v.

**SECOND NATIONAL BANK OF SAGINAW, Defendant, Third-Party Plaintiff,**

v.

**STATE OF MICHIGAN, Third-Party Defendant.**

**Bankruptcy No. 87–09066.**

**Adv. No. 87–9030.**

United States Bankruptcy Court, E.D. Michigan, N.D.

Jan. 29, 1988.

MEMORANDUM OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ARTHUR J. SPECTOR, Bankruptcy Judge.

The facts of this case are straightforward and not in dispute. The debtor purchased a 1984 Chevrolet from McDonald Pontiac–Cadillac–GMC, Inc. She financed the purchase with a loan from defendant Second National Bank of Saginaw and signed a security agreement granting defendant a security interest in the vehicle. Following its standard practice, the dealer prepared the necessary paperwork required by Michigan statute for the issuance of a

certificate of title by the Secretary of State. The dealer forwarded the necessary papers to the Secretary of State's office in Lansing, Michigan, on official form RD–108, with the expectation that a certificate of title would be issued to the debtor as the owner of the car. The RD–108 clearly indicated that the defendant was to be noted on the certificate of title as the sole holder of a security interest in the vehicle. Unfortunately, when the certificate of title was issued by the State of Michigan, the defendant was not listed as a lienholder. In fact, the certificate of title erroneously reflected that there were no outstanding liens at all.

After the debtor filed for protection under Chapter 7 of the Bankruptcy Code, the trustee filed a complaint to determine the validity of liens against the vehicle. In his complaint the trustee stated that 11 U.S.C. § 544(a) gave him the right to avoid as unperfected the defendant's security interest as the certificate of title failed to reflect it. The trustee stated that "the only means to perfect a security interest in a vehicle in Michigan is by noting that interest on a certificate of title ..."

The defendant argued that it is without fault and that its lien was perfected as a consequence of its filing of the RD–108; it claimed, therefore, that its lien was superior to the trustee's hypothetical lien. The trustee moved on the uncontested facts for summary judgment. The defendant responded by arguing that the law required that a judgment be entered in its favor.

The issue in this case then is as straightforward as the facts: is a security interest in a motor vehicle in the State of Michigan perfected when the certificate of title lacks a notation of the security interest even though the application for the certificate of title was properly made? Were the plaintiff in this case an actual purchaser rather than a hypothetical lien creditor resolving this case would have been more painful, but the result would have been the same.

This case illustrates the conflict between the inherent policy objectives in any lien recordation system when the filing officer errs: does the original lender who complied with all requirements of law or the innocent subsequent bona fide purchaser (or lender) without knowledge of the first lender's lien suffer the loss when the intermediary is unavailable or, as here, insolvent? Which of the two innocent parties bears the loss? *See In re Bufkin Bros.*, 757 F.2d 1573, 157 (5th Cir.1985) (recognizing the harshness of the result). One goal of lien recordation laws is to protect lenders who take consensual liens on property and to thereby facilitate commerce since "after perfection the secured party is protected against creditors and transferees of the debtor...." U.C.C. § 9–303, Comment 1. To accomplish this goal, courts have held that when lenders comply with all requirements for perfection of a lien, a recorder's error is irrelevant: the lien is deemed perfected. *See e.g., In re Bufkin Bros., supra; Chemical Bank v. Barron,* 663 F.Supp. 367, 369 (S.D.N.Y.1987); *In re Atlas Technologies, Inc.,* 78 B.R. 394, 400 (E.D.N.Y.1987); White and Summers, *Uniform Commercial Code,* § 23–15 (2d ed. 1980); Anderson, 9 *Uniform Commercial Code,* § 9–403:6 (1985). The same goal of facilitating commerce is also advanced by ensuring the free transferability of property. It is essential that purchasers (and lenders) feel confident that when the recorder certifies that title to the property is unencumbered, it is, and that they may act accordingly with impunity. *Cf., Yampolsky v. White Motor Credit Corp., (In re Angier),* 684 F.2d 397 (6th Cir.1982); *Uhle v. Parts and Trucks (In re Paige),* 679 F.2d 601 (6th Cir.1982). To accomplish this goal, a court could hold that when a buyer (or lender) receives a certificate from the recorder showing clear title in the seller (or borrower) clear title is what it gets.

The predominant view when the recorder of real property transactions mis-indexes a document is that the party who filed the document is nonetheless protected against claims of innocent third parties. *See* 59 CJS *Mortgages* § 266 (1949); 76 C.J.S. *Records* § 18 (1952); *New Jersey Bank v. Azco Realty Co.,* 148 N.J. Super 159, 372 A.2d 356 (1977). The Uniform Commercial Code takes the same view with respect to goods. U.C.C. 9–403(1); *see, e.g., In re*

*Bufkin Bros., supra; Chemical Bank v. Barron, supra; In re Atlas Technologies, Inc., supra.*

An exception has been made in many states with respect to motor vehicles. In 23 states, apparently, actual notation of the secured party's lien on the certificate of title is a pre-requisite for perfection of a security interest in a motor vehicle. *See* 1C UCC Serv. § 30A.07[6], Appendix I (Matthew Bender 1984).[1] In those jurisdictions the risk of recording error is shifted to the party who filed the mis-recorded document. *See, e.g., In re Tressler,* 771 F.2d 791 (3rd Cir.1985) (applying Pennsylvania law); *First National Bank of Denver v. Turley,* 705 F.2d 1024 (8th Cir.1983) (applying South Dakota law); *In re DeSchamp,* 44 B.R. 517 (Bankr.N.D.Iowa 1984); *In re Corsica Enterprises, Inc.,* 40 B.R. 769 (Bankr.D.S.D.1984); *In re Farris,* 40 B.R. 58 (Bankr.M.D.Ala.1984); *Richlands Nat. Bank v. Smith,* 34 B.R. 749 (W.D.Va.1983); *In re Grizaffi,* 23 B.R. 137 (Bankr.D.Colo.1982); *In re Georgia Steel, Inc.,* 25 B.R. 796 (Bankr.M.D.Ga.1982); *General Motors Acceptance Corp. v. Hodge,* 485 S.W.2d 894 (Ky.1972); *see* 9 Anderson *Uniform Commercial Code,* § 9–403:6. Many other states have not made such an exception. *See e.g., In re Farnham,* 57 B.R. 241 (Bankr.D.Vt.1986); *In re Butler's Tire & Battery Co.,* 17 U.C.C. Rep.Serv.1363 (Bankr.D.Ore.1975) *aff'd* 8 C.B.C. 790, 18 U.C.C.Rep.Serv. 1302 (D.Or.1976); *Liberty National Bank & Trust Co. of Oklahoma City v. Garcia,* 686 P.2d 303, 38 U.C.C.Rept.Serv. 1040 (Okla.App.1984); *Ferguson v. Morgan,* 282 N.C. 83, 191 S.E.2d 817 (1972).

The prescribed procedure for perfecting a security interest in an automobile in Michigan is found in the Michigan Uniform Commercial Code and the Michigan Vehicle Code. Mich.Comp.Laws § 440.9302(3), (4); Mich.Stat.Ann. § 19.9302(3), (4) (hereinafter cited as Mich.U.C.C. § ——) states:

(3) The filing of a financing statement otherwise required by this article is not necessary or effective to perfect a security interest in property subject to: (b) the following statutes of this state: (i) Section 216 of Act No. 300 of the Public Acts of 1949, as amended, being section 257.216 of the Michigan Compiled Laws ..."

(4) ... compliance with § 217 or 238 of Act No. 300 of the Public Acts of 1949, as amended, being §§ 257.217 and 257.-238 of the Michigan Compiled Laws ... is equivalent to the filing of a financing statement under this article and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith except as provided in section 9103 on multiple state transactions.

The "Official U.C.C. Reasons for 1972 Change" following Mich.U.C.C. § 9404, acknowledges that "perfection of security interests in most motor vehicles is governed by certificate of titles law, not by the provisions of Article 9."

The procedure dictated by Mich.Comp. Laws § 257.217; Mich.Stat.Ann. § 9.1917 (hereinafter referred to as Mich. Vehicle Code) is, in pertinent part, as follows:

(1) An owner of a vehicle subject to registration under this act shall make application to the secretary of state for the registration of the vehicle and issuance of a certificate of title for the vehicle accompanied by the required fee upon an appropriate form furnished by the secretary of state. An application for a certificate of title shall bear the signature of the owner written with pen and ink. The application shall contain all of the following:

(a) the name, bona fide residence, and mailing address of the owner or business address of a firm, association, or corporation....

(c) a statement of the applicant's title and the names and addresses of the holders of security interests in the vehicle and in an accessory to the vehicle, in the order of their priority....

---

**1.** Michigan is not among the states listed in this reference source as requiring actual notation on the certificate of title.

(2) A dealer selling or exchanging vehicles required to be titled shall within 15 days after delivering a vehicle to the purchaser make application to the secretary of state for a new title, if required, and transfer or secure registration plates and secure a certificate of registration for the vehicle, in the name of the purchaser.... The purchaser of the vehicle shall sign the application, including, when applicable, the declaration specifying the maximum elected gross weight as required by subsection (1)(f), and other necessary papers to enable the dealer to secure the title, registration plates, and transfers from the secretary of state.

Mich. Vehicle Code § 222, in pertinent part, states the duties of the Secretary of State upon receipt of a proper application. It says:

(1) The secretary of state when registering a vehicle and upon receipt of the required fees shall issue a registration certificate and a certificate of title except as otherwise provided in this Act....

(3) The certificate of title shall ... contain on its face the identical information required on the face of the registration certificate; a statement of the owner's title and of all security interests in the vehicle or in an accessory on the vehicle as set forth in the application; the date on which the application was filed and other information that the secretary of state may require....

(5) The certificate of title shall be mailed or delivered to the owner or other person the owner may direct in a separate instrument, in a form the secretary of state shall prescribe.

Accordingly, then, when a proper application is made to the Secretary of State for the issuance of a certificate of title, the Secretary of State is, in the usual case, to issue to the owner of the vehicle a certificate of title noting all security interests in the vehicle in the order of their priority. The language of the Mich. Vehicle Code is directory in nature. The owner, or car dealer, if applicable, of a vehicle shall make application to the Secretary of State for a certificate of title and shall include all security interests in the vehicle on the application. The Secretary of State shall include all security interests on the certificate of title.

Neither the parties nor the Court have been able to uncover any published opinion in the State of Michigan on the state or federal level addressing the exact issue presented in this case. Cases exist which deal with issues closely akin to ours, but stop short of deciding this precise issue. *In re Park,* 22 U.C.C.Rep.Serv. 1074 (Bankr.W.D.Mich.1977); *In re Chapin,* 6 U.C.C.Rep.Serv. 984 (Bankr.W.D.Mich. 1969); *In re Schipper,* 4 U.C.C.Rep.Serv. 242 (Bankr.W.D.Mich.1966); *Remes v. Ford Motor Credit Co. (In re Churchwell),* 80 B.R. 855 (1987).

The trustee primarily relies on *Waldschmidt v. Smith (In re York),* 43 B.R. 36 (Bankr.M.D.Tenn.1984). In *York* the creditor filed the application for title with the appropriate fees but the Motor Vehicle Division of the Department of Revenue of the State of Tennessee lost it. Consequently, the lien was never noted on the title. Because Tennessee law stipulated that both *filing and notation* were required to perfect title in an automobile, the trustee in bankruptcy was held to be entitled to use his status as a lien creditor to avoid the unperfected security interest in question. The court in *York* indicated that Tennessee had adopted a statute which required *filing and notation* upon the certificate to properly perfect the security interest. However, the court in *York* acknowledged the existence in various other states of contrary provisions.

The trustee acknowledged in his brief that Michigan's title law is not comparable to Tennessee's. He also argued that notation on the lien is the only method by which a security interest in a vehicle may be perfected. Although the trustee concedes that the Michigan Vehicle Code does not explicitly state that actual notation is required for perfection as does its Tennessee counterpart, he has not explained why the result in Michigan should parallel the result in Tennessee.

The statutes of Michigan are the source for the answer to this issue. As quoted earlier, U.C.C. § 9302(4) states that "compliance with ... section 217 ... is *equivalent* to the filing of a financing statement under this article and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith...." [emphasis added]. Vehicle Code § 217 states that an applicant for a certificate of title shall make application to the Secretary of State and shall include in his application all holders of security interests in his vehicle. Thus the legislature has directed the courts to treat the filing of an application for a certificate of title for a motor vehicle as the "equivalent" of the filing of a financing statement. Michigan UCC § 9403(1) states that "Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this article." The UCC directs "that under § 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer." Official UCC Comment to Michigan U.C.C. § 9407; *In re Skinner, 22 UCC Rep.Serv. 1286 (Bankr.W.D.Mich.1977); also see In re Bufkin Bros., supra; Chemical Bank v. Barron, supra; In re Atlas Technologies, Inc., supra.* Michigan, then, is among the jurisdictions which do not require notation on the certificate of title to perfect a security interest, as long as the applicant is without fault in preparation and tender of the necessary forms. We therefore hold that as the defendant properly applied for a certificate of title listing itself as a secured party, the failure of the Secretary of State to note the security interest on the certificate of title is inconsequential. The defendant's lien is to be considered perfected for purposes of the Mich.U.C.C. and the Mich. Vehicle Code.

*In re Churchwell, supra,* is not to the contrary. There the debtor and her husband purchased a vehicle from a dealer, granting that dealer a purchase money security interest in the vehicle. The dealer thereupon assigned the security interest to Ford Motor Credit Corporation (FMCC). Contemporaneously with the sale an RD–108 was filed with the Secretary of State and, subsequently, a title was issued indicating FMCC as the first lienholder. Pursuant to the purchasers' divorce property settlement, the husband's interest in the vehicle was transferred to the wife. When the wife applied for a new title, FMCC was not included in the transfer of title form TR–111 as first lienholder. The debtor received her new title, sans any reference to FMCC as a lienholder. The debtor then filed a Chapter 7 and the trustee sought to avoid FMCC's security interest. Finding for the trustee, the court held that pursuant to Mich. Vehicle Code § 238, the secured party had the duty to see to it that the transfer of title application properly noted its lien. Since it participated in the transfer of title without requesting the Secretary of State to continue its lien on the new certificate, when the new certificate was issued without noting it, its lien was held to be unperfected, and therefore, junior to the trustee's hypothetical lien. The court, in *dictum,* however, noted that:

> In Michigan, to perfect a security interest in a motor vehicle, an application must be filed with the Secretary of State which states the name and address of the secured party. Mich.Comp. Laws § 440.9302(4); Mich.Comp.Laws § 259.217(c) (sic); Mich.Comp.Laws § 257.238(a); *In re Schipper,* 4 U.C.C. Rep.Serv. 242, 243 (Bankr.W.D.Mich. 1966); *In re Chapin,* 6 U.C.C.Rep.Serv. 984, 989 (Bankr.W.D.Mich.1969). *Michigan therefore, appears to be a "delivery" state rather than an "indication" or a "dual" state. See In re Farnham,* 57 B.R. 241, 245, 42 U.C.C.Rep.Serv. 1059, 1065–66 (Bankr.D.Vt.1986) ... In this case, FMCC was not noted on the second application or the second title. This decision does not address the situation where the secured creditor is listed on the application but *not* on the subsequently issued title. In such an instance a collision between technical perfection

requirements and the public policy argument regarding consumers' reliance upon titles would occur. [Emphasis added]. *Id.*, At 860, n. 7.

The "collision" has occurred here. We conclude that the Michigan legislature has directed that the filing of a proper application for title is the sole prerequisite for the perfection of a security interest in an automobile. We therefore hold that at all times the defendant's security interest in the debtor's motor vehicle was perfected. The trustee may not exercise his powers as a hypothetical lien creditor under 11 U.S.C. § 544(a) to avoid that security interest.[2]

A judgment consistent with this opinion will be entered contemporaneously herewith.

Thomas R. Straus, Steubenville, Ohio, Trustee.

Andrew W. Miller, Steubenville, Ohio, for debtors.

2. Thus, a bona fide purchaser of a vehicle, or a subsequent lender who accepts a security interest in a vehicle which has already been pledged as security on a loan made by a prior lender, would lose to the lender who properly filed a form RD–108 noting its lien even though the lien was ultimately omitted from the vehicle's certificate of title. If the Michigan legislature is unhappy with this result, it may merely add a sentence to the Mich. Vehicle Code, stating that, notwithstanding Michigan U.C.C. § 9302(4), a lien is not perfected unless it actually appears on the certificate of title. Banks could easily adapt to such a change in the law since § 222(5) of the Mich. Vehicle Code already expressly provides that the owner of the vehicle may direct the Secretary of State to send the new certificate of title to whomever he or she chooses. The lender may refuse to lend the money unless the borrower executes a separate instrument directing the Secretary of State to send the new certificate of title to the lender. A form prescribed by the Secretary of State already exists for this purpose: form TR–121. After the lender has had a fair opportunity to verify that its lien is noted on the certificate, it could be required by statute to then turn it over to the owner.